**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Melvin WILSON, Defendant-Appellant.**

**No. 18554.**

United States Court of Appeals, Seventh Circuit.

Feb. 8, 1971.

Certiorari Denied April 26, 1971.

See 91 S.Ct. 1525.

---

**480**

Harry G. Fins, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Allan E. Lapidus, Asst. U. S. Attys., of counsel.

Before CASTLE, Senior Circuit Judge, and KILEY and PELL, Circuit Judges.

CASTLE, Senior Circuit Judge.

The defendant-appellant, Melvin Wilson, prosecutes this appeal from a judgment order of conviction and sentence entered following his trial before the court without a jury on Count II of an indictment charging him with a violation of 7 U.S.C.A. § 2023.[1] He was sentenced to three years imprisonment and fined $5000 and costs. Execution of the sentence was suspended and defendant placed on probation for a period of three years, the first ninety days of the probationary period to be served in a jail-type institution, and a condition of probation being that defendant re-compensate the Federal Defender's Office for expense incurred in representing him.[2]

7 U.S.C.A. § 2023 (Section 14 of the Food Stamp Act of 1964, P.L. 88–525, 78 Stat. 703) relates, inter alia, to the "transfer" of food stamp coupons. It provides, insofar as here pertinent, that:

"(b) Whoever knowingly uses, transfers, acquires, or possesses coupons in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons are of the value of $100 or more, be guilty of a felony and shall, upon conviction thereof, be fined not more than $10,000 or imprisoned for not more than five years, or both, * * * *"

Another section of the same enactment (7 U.S.C.A. § 2018, Section 9 of the Food Stamp Act of 1964) provides that the Secretary of Agriculture in issuing regulations he is required to issue for the administration of the food stamp program:

" * * * shall provide for the redemption of coupons accepted by retail food stores through approved wholesale food concerns or through banks, with the cooperation of the Treasury Department."

The regulations so issued by the Secretary of Agriculture (7 C.F.R. Section 1600 et seq.) authorize the transfer of food stamp coupons by a retail food store authorized to participate in the food stamp program (Section 1602.4) only by the presentment of such coupons to an authorized wholesale food concern, or to a commercial bank, for redemption. In connection with such redemption the retailer is required to endorse each coupon with the store's name or its authorization number and to furnish a redemption certificate form provided by the Consumer and Marketing Service of the United States Department of Agriculture.

The evidence adduced at the defendant's trial amply establishes the existence of facts which may be summarized as follows.

On August 8, 1968, the defendant was the owner of a grocery store located in

---

1. The indictment consisted of two counts and named two defendants. The government dismissed the first count and dismissed the other defendant from the second count.

2. At his trial the defendant was represented by court-appointed counsel supplied through the Federal Defender Program. The pre-sentence report revealed that the defendant was not indigent but in addition to other assets had approximately $14,300 in savings.

Chicago, Illinois, which he operated under the name of Wilson's Food Mart. Since 1964 he had been authorized to participate in the federal food stamp program as a retail food store. He usually deposited from $1,500 to $1,600 in food stamp coupons each week, either through a wholesale food concern or a commercial bank. On the above date the defendant sold food stamp coupons worth $1,650 to William D. Crowell and Lamont Knazze for $1,500. The coupons were not endorsed by the defendant and were not accompanied by a certificate of redemption. Crowell and Knazze were partners in the operation of Select Groceries, a Chicago retail food store which also was authorized to participate in the federal food stamp program. Select Groceries was not an authorized wholesale food concern.

The August 8, 1968, transaction followed an offer made by the defendant to Crowell and Knazze on July 31, 1968, to sell them $1,000 worth of food stamp coupons for $950. On that occasion in response to being advised that both Crowell and Knazze were police officers, the defendant replied, "Yes, I know you're police officers, but everybody likes to make a little money". Crowell and Knazze told the defendant they would think over his offer. They reported the offer and were contacted by agents of the Department of Agriculture. Arrangements were then made which culminated in the August 8, 1968, transaction. The defendant brought the $1,650 worth of food stamp coupons to Select Groceries and he was given $950 in cash and $550 in checks in payment for the coupons. In connection with the transaction inquiry was made as to future purchases, and the defendant was asked if a large amount of stamps could be so acquired. He replied in the affirmative and stated that he had about $30,000 worth of stamps as "this is a big operation". Immediately following the transaction the defendant was arrested by a Secret Service Agent, and the currency and checks given him by Crowell and Knazze were found on his person.

On appeal the defendant contends that his actions in the premises constitute merely a discounting of $1,650 worth of food stamp coupons for $1,500. He argues that nowhere in the statutes, or in the regulations issued pursuant thereto, is the discounting of food stamps prohibited and, consequently, the evidence adduced at the trial does not establish an offense. In this connection he also asserts that none of the statutory sections or regulations cited in the indictment prohibits the discounting of food stamp coupons.

The statutory sections and sections of the regulations cited in the indictment embrace those to which we have made reference earlier in this opinion. Thus, in our opinion, it satisfied the requirements of Rule 7(c) of the Federal Rules of Criminal Procedure. And, in other respects, the indictment sufficiently charged an offense so as to make it invulnerable to any contention that it violated Sixth Amendment standards.[3]

As heretofore pointed out, 7 U.S.C.A. § 2018 and 7 C.F.R. Section 1602.4 establish the only authorized manner in which food stamp coupons may be transferred lawfully by a retail food dealer participating in the food stamp program. These provisions are apparently designed to prevent trafficking in such coupons. Defendant's contention that his "discounting" of the coupons here involved is not by virtue of § 2018 and Section 1602.4 of the regulations an unauthorized transfer within the proscriptions of 7 U.S.C.A. § 2023 ignores the patent fact that his sale of the stamps albeit at a discount was a transfer—and a transfer in a "manner not authorized" by the Food Stamp Act of 1964 or the regulations issued pursuant thereto.

Defendant's reliance on United States v. Resnick, 299 U.S. 207, 57 S.Ct. 126, 81

---

3. Cf. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92.

L.Ed. 127, is misplaced. *Resnick* involved a 1928 enactment (15 U.S.C. §§ 257–257i, since repealed) which regulated the manufacture and sale of certain sized hampers for fruits and vegetables. The nine specific sizes of hampers mentioned in the statute were based on a standard bushel of 2150.42 cubic inches. These hampers, among other things, were required to meet tolerances prescribed by the Secretary of Agriculture. The nine specified sizes did not include a two-quart (one-sixteenth of a bushel) hamper. The smallest of the designated sizes was a one-eighth-bushel (268.8 cubic inches) hamper. The Court, noting that in the absence of governmental regulation "the making and selling of containers is untrammeled" and that the statute contained no express condemnation of two-quart hampers, held that the statute did not prohibit the manufacture or sale of two-quart hampers nor subject them to the requirements it made in connection with the manufacture and sale of the specific sizes of hampers designated in the statute.

We do not find *Resnick* apposite. We are here concerned with coupons which are recognized as an obligation of the United States (7 C.F.R. Section 1600.4) and are intended for use only in connection with a federal food distribution program, not with an ordinary article of trade and commerce the manufacturing and selling of which is untrammeled absent specific governmental regulation. But more important, 7 U.S.C.A. § 2023 proscribes the use or transfer of these coupons "in any manner not authorized" by the statute or the regulations issued pursuant thereto. Here, both the language and the context of the prohibition is such that, unlike *Resnick,* there must be an authorization of the transfer rather than an express interdiction. And that authorization is lacking.

The judgment order appealed from is affirmed.

Affirmed.