**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bonnie Sue O'BRIEN and Paul O'Brien,
Defendants-Appellants.**

Nos. 81–1473, 81–1474.

United States Court of Appeals,
Tenth Circuit.

Aug. 23, 1982.

Vernon E. Lewis, Asst. U. S. Atty., Kansas City, Kan. (Jim J. Marquez, U. S. Atty., Kansas City, Kan., with him on the brief), for plaintiff-appellee.

David J. Phillips, Asst. Federal Public Defender, Kansas City, Kan. (Leonard D. Munker, Federal Public Defender, D. Kan., Kansas City, Kan., with him on the brief), for defendants-appellants.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

In count one of a two-count indictment, Bonnie Sue O'Brien was charged with knowingly acquiring, in a manner not authorized by Chapter 51, Title 7, U.S.C., or the regulations thereunder, food stamp coupons having a face value of $500 in exchange for $220, in violation of 7 U.S.C.

§ 2024(b)[1] In a second count, Bonnie Sue O'Brien and her husband, Paul O'Brien, were charged with knowingly acquiring, in a manner not authorized by Chapter 51, Title 7, U.S.C., or the regulations issued thereunder, food stamp coupons in exchange for 20 tablets of phenmetrazine,[2] in violation of 7 U.S.C. § 2024(b). A jury was unable to reach a verdict with respect to the first count of the indictment and a mistrial as to that count was declared. The same jury, however, convicted both O'Briens on the second count, and the O'Briens now appeal their respective convictions on that count.

Sometime in the early part of 1980, Jackie Clark, a long-time friend of Bonnie Sue O'Brien, became an informant. Clark contacted Ms. O'Brien on or about March 8, 1980, to ascertain whether she was interested in purchasing some food stamp coupons from him. As a result of this initial contact, sometime later that day Clark and an undercover police officer visited Ms. O'Brien in her home. Ms. O'Brien advised Clark and the officer that she needed to cash a check, whereupon they accompanied her to a grocery store where she cashed a check. Thereafter, Ms. O'Brien allegedly gave them $220 in exchange for $500 worth of food stamps. This transaction formed the basis for the first count in the indictment, which culminated in a hung jury and a mistrial.

Seven weeks after the events of March 8, 1980, the informant and the undercover police officer returned to the O'Brien residence. This time they initially contacted only Paul O'Brien, and not Ms. O'Brien. On that occasion it was agreed that in exchange for $500 worth of food stamps, Paul O'Brien would give them 20 tablets of phenmetrazine. Bonnie Sue O'Brien thereafter accompanied her husband Paul, first to a doctor and then to a pharmacy, where, pur-

suant to a prescription, the phenmetrazine was obtained. Both O'Briens were present in their home when the food stamps and pills were later exchanged. The undercover agent testified that a portion of the food stamp coupons were given directly to Bonnie Sue O'Brien, and that it was she who handed over the phenmetrazine. This transaction formed the basis for the second count in the indictment. As indicated, the jury convicted both O'Briens on the second count, and this appeal relates to such convictions.

On appeal, the principal ground urged for reversal by both appellants pertains to the instructions given the jury setting forth the essential elements of 7 U.S.C. § 2024(b). The district court instructed the jury that one essential element of the crimes charged was that the defendants acted "knowingly," and in the connection therewith stated that an act is done "knowingly" if it is done voluntarily and purposely, and not because of mistake, accident, or any other innocent reason. The district court, however, refused to instruct the jury that another essential element of the crime charged was that the defendants knew that they acquired the coupons in a manner not authorized by statute or regulation. On appeal, this failure to so instruct constitutes the primary ground for reversal.

As indicated, 7 U.S.C. § 2024(b)(1) provides, in essence, that whoever knowingly acquires food stamp coupons in a manner not authorized by statute or regulation is guilty of a felony. It is the government's position that the adverb "knowingly" modifies only the verb "acquire," and does not modify the ensuing clause "in a manner not authorized by this chapter or the regulations issued pursuant to this chapter." Counsel for the defendants argues that the word "knowingly" modifies not only the

---

1. 7 U.S.C. § 2024(b)(1) provides, in pertinent part, as follows:

 [W]hoever *knowingly* . . . acquires [food stamp] coupons . . . in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons . . . are of a value of $100 or more,

be guilty of a felony and shall, upon first conviction thereof, be fined not more than $10,000 or imprisoned for not more than five years, or both. (Emphasis added.)

2. Phenmetrazine is a controlled substance. *See* 21 U.S.C. § 812 (1976 & Supp. IV 1980).

verb "acquire," but also the ensuing clause "in a manner not authorized by this chapter or the regulations issued pursuant to this chapter." In short, the defendants maintain that a knowledge that an acquisition of food stamp coupons is in a manner not authorized by statute or regulation is an essential element of 7 U.S.C. § 2024(b), and that failure to so instruct the jury constitutes reversible error. We agree.

Despite the fact that millions of individuals have participated in the Food Stamp Program since its inception in 1964, this case appears to be one of first impression. Neither of the parties has identified any case directly bearing on the present issue, nor has our search revealed any such case.

 The problem here is essentially one of ascertaining Congressional intent. We begin with the proposition that, except in rare circumstances, a statute which is clear and unambiguous on its face must be given effect according to its plain meaning without reference to legislative history. *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *TVA v. Hill*, 437 U.S. 153, 187 n.33, 98 S.Ct. 2279, 2298 n.33, 57 L.Ed.2d 117 (1978); *United States v. Western Pacific Railroad Co.*, 385 F.2d 161, 163 (10th Cir. 1967), *cert. denied*, 391 U.S. 919, 88 S.Ct. 1805, 20 L.Ed.2d 656 (1968). We conclude, however, that 7 U.S.C. § 2024(b) is simply not clear

on its face, and, on the contrary, is ambiguous. The statute can be read either way.[3] In such circumstance, resort to legislative history is proper.

The Food Stamp Act of 1964 was introduced in Congress in the spring of that year as H.R. 10222.[4] Hearings on this bill were held before the Senate Committee on Agriculture and Forestry on June 18 and 19, 1964. During the entire two days of testimony, discussion of the enforcement provision of the Act surfaced only once, and the issue of whether liability should be imposed for voluntary acquisition of food stamp coupons by individuals who were unaware that the acquisition was unauthorized was not addressed. *See* Food Stamp Act of 1964: Hearings on H.R. 10222 Before the Senate Committee on Forestry & Agriculture, 88th Cong., 2d Sess. 32–33 (1964). Likewise, neither of the two committee reports published by Congress on H.R. 10222 sheds any light on this question.[5]

Finding the contemporaneous legislative history to be of little assistance in resolving the problem at bar, we refer next to earlier versions of the food stamp bill for some clue as to the meaning of the enforcement provision. On April 22, 1963, in the year preceding the enactment of H.R. 10222, H.R. 5733 was introduced in the House. H.R. 5733 included a provision identical to the en-

---

**3.** The problem we are presented with here is somewhat analogous to the situation described in the following excerpt from LaFave & Scott:

Still further difficulty arises from the ambiguity which frequently exists concerning what the words or phrases in question modify. What, for instance, does "knowingly" modify in a sentence from a "blue sky" law criminal statute punishing one who "knowingly sells a security without a permit" from the securities commissioner? To be guilty must the seller of a security without a permit know only that what he is doing constitutes a sale, or must he also know that the thing he sells is a security, or must he also know that he has no permit to sell the security he sells? As a matter of grammar the statute is ambiguous; *it is not at all clear how far down the sentence the word "knowingly" is intended to travel—whether it modifies "sells," or "sells a security," or "sells a security without a permit."* (Emphasis added.)

W. LaFave & A. Scott, Criminal Law § 27 (1972). Similarly, in the case at bar, it is not clear how far down the sentence the word "knowingly" is intended to travel.

**4.** H.R. 10222 was enacted as Pub.L.No.88–525, 78 Stat. 703 *et seq.* on August 31, 1964.

**5.** Both H.R.Rep.No.1228, 88th Cong., 2d Sess (1964) and S.Rep.No.1124, 88th Cong., 2d Sess., *reprinted in* [1964] U.S.Code Cong. & Ad. News 3275, include only the following analysis of the enforcement provision of the bill:

Section 14. Violations and enforcement

This section makes it a violation of Federal law to knowingly use, transfer, acquire, or possess coupons in any manner not authorized by this act or to present, or cause to be presented, such coupons for redemption knowing them to have been received, transferred, or used in any manner in violation of the provisions of the act.

forcement section enacted in H.R. 10222.[6] Hearings on this bill were held before the House Committee on Agriculture on June 10, 11, and 12, 1963, before the legislation was tabled by the committee in a special executive session. Review of the text of those hearings reveals only that the enforcement provision was drafted by the Department of Justice. *See* Hearings on the Food Stamp Plan Before the House Committee on Agriculture, 88th Cong., 1st Sess. 5–6 (1963).

In short, it does not appear the issue before us was ever considered by Congress. We conclude, therefore, that the "legislative history of [the Food Stamp Program] hardly speaks with that clarity of purpose which Congress supposedly furnishes courts in order to enable them to enforce its true will." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 483, 71 S.Ct. 456, 462, 95 L.Ed.2d 456 (1951). Accordingly, we turn instead to certain maxims of statutory construction for aid in interpreting § 2024(b).

It is well established that ambiguity concerning the ambit of a criminal statute should be resolved in favor of lenity and construed strictly against the government. *Adams Wrecking Co. v. United States*, 434 U.S. 275, 285, 98 S.Ct. 566, 572, 54 L.Ed.2d 538 (1978); *United States v. Bass*, 404 U.S. 336, 347–48, 92 S.Ct. 515, 522–23, 30 L.Ed.2d 488 (1971); *United States v. Conners*, 606 F.2d 269, 272 (10th Cir. 1979); *United States v. Schwanke*, 598 F.2d 575, 579 (10th Cir. 1979). *See also* J. Sutherland, Statutes and Statutory Construction § 59.03 (4th ed. 1973) [hereinafter cited as Sutherland].[7] We recognize also that as a general rule, criminal statutes are interpreted as requiring criminal intent, and this is particularly true in situations in which the offense involved is a felony.[8] *See* W. LaFave & A. Scott, Criminal Law § 31 (1972); Sutherland at § 59.04.

Applying these principles to the instant case, we hold the trial court erred by failing to instruct the jury that knowledge that one's acquisition of food stamps is not authorized by statute or regulation is an essential element of 7 U.S.C. § 2024(b). In so doing we note incidentally that the decision we reach today avoids the incongruous result of imposing criminal liability for a wider range of violations under the Act than civil liability.[9]

Ironically, in the instant case, the government did, in fact, introduce evidence tending to show that the O'Briens knew that they were acquiring the coupons in an un-

---

**6.** Subsection (b) of the enforcement provision enacted as 78 Stat. 708 appeared as subsection 14(c) in H.R. 5733.

**7.** In *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the respondent was convicted of possessing firearms in violation of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968. That statute read, in pertinent part:

"Any person who—
"(1) has been convicted by a court of the United States or of a state or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned not more than two years, or both."
The issue involved in the *Bass* case was whether the statutory phrase "in commerce or affecting commerce" applied to "possesses" and "receives" as well as "transports." After reviewing the legislative history of the Omnibus Crime Control Act and finding it inconclusive, the Supreme Court held, in accordance with the rule of lenity, that the clause "in

commerce or affecting commerce" qualified all three antecedents.

**8.** The Model Penal Code (the Code) states that culpability requirements prescribed by other sections of the Code will not be applied to statutory offenses "in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof *plainly appears*." Model Penal Code § 2.05(1)(b) (1962) (emphasis added).

As we indicated earlier, in this case, the committee hearings and reports do not evince a legislative intent to impose absolute or strict liability on food stamp recipients who unknowingly take actions not authorized by statute or regulation.

**9.** Under 7 U.S.C. § 2015(b)(1) participants in the program who *intentionally* make false statements or misrepresentations, withhold facts, or commit acts which violate the statute or regulations, are subject to suspension and/or expulsion from the program.

authorized manner.[10] However, we do not know whether the jury would have been persuaded by such testimony, since it was *not* instructed that an essential element of the crime charged was that the O'Briens knew that their acquisition of the coupons was an unauthorized acquisition.

Neither of the other grounds for reversal has merit, and need not, under the circumstances, be discussed.

Judgment reversed and cause remanded for further proceedings consonant with the views herein expressed.

**10.** The record indicates that prior to the dates charged in the indictment, Ms. O'Brien applied to the State of Kansas Department of Social and Rehabilitation Services for food stamps. On the application form directly above her signature is printed a penalty warning notifying applicants that it is unlawful, *inter alia*, to trade or sell food stamps or to use someone else's food stamps.