**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank LIPAROTA, Defendant-Appellant.**

**No. 83–1879.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1984.

Decided June 4, 1984.*

---

* This opinion has been circulated among all judges of this court in regular active service. Only one judge favored a rehearing *en banc* on the question of whether this opinion creates a conflict with the Eighth and Tenth Circuit decisions in *United States v. Marvin,* 687 F.2d 1221 (8th Cir.1982), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983) and *United States v. O'Brien,* 686 F.2d 850 (10th Cir.1982).

William T. Huyck, Chicago, Ill., for defendant-appellant.

Dean J. Polales, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before ESCHBACH, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The defendant, Frank Liparota, appeals his conviction of three counts of acquiring and possessing food stamps in violation of 7 U.S.C. § 2024(b) (1977). We affirm.

Liparota and his brother, Charles LaPort, owned a sandwich shop in Chicago, Illinois, known as Moon's. The restaurant had never been authorized to participate in the food stamp program.

At trial, Special Agent Sherrye Hampton of the United States Department of Agriculture testified that she received information in March of 1982 from one of the appellant's former employees that she might be able to sell food stamps at the restaurant. Based on this information, Hampton began her investigation with a visit to Moon's restaurant on March 27, 1982 (on each visit to the restaurant, Agent Hampton was equipped with a recording device). On that date, she approached a man behind the counter and asked to speak to Frank. The appellant responded that he was Frank (Liparota). Hampton informed Liparota that she had $195.00 worth of food stamps for sale. He asked her how much she wanted for them; she responded, "whatever is fair." In response, Liparota offered to pay $150.00 for the stamps. Hampton was then directed to a back room in the restaurant where LaPort gave her $150.00 in cash for the food stamps.

On April 3, 1982, Hampton returned to Moon's. She testified that Liparota approached her while she was seated at the lunch counter. She informed him that she had $500.00 worth of food stamps for sale and he again asked her how much she wanted for them whereupon she responded, "Well, whatever is fair, you tell me what you think." She testified that Liparota on this occasion offered her $350.00 for the

stamps although she was actually paid only $300.00.

Hampton visited the restaurant again on May 5, 1982, with another $500.00 supply of food stamps. She testified that the defendant informed her that he had no money at that time to purchase the stamps, thus a meeting was arranged for the following day. On the next day, Hampton testified that she was paid $350.00 for $500.00 worth of food stamps. She also stated that Liparota offered to "hustle" food stamps for her in exchange for $50.00 worth of food stamps.

At trial, Liparota admitted setting the price for the food stamps purchased on March 27, 1982, denied taking part in the actual sale, and also denied participating in the other transactions, testifying that it was not his voice on the tapes. The tapes of each transaction were played several times for the jury.

The jury found Liparota guilty of all three counts of acquiring and possessing food stamps in a manner not authorized by 7 U.S.C. § 2024(b) (1977). A sentence of three hours in prison was imposed and suspended. The defendant appeals.

The appellant argues that the trial court limited the government to proving a violation of 7 C.F.R. § 278.2(a) (1978).[1] He maintains that this provision is inapplicable in his case because he did not operate a retail food store. He contends that the inapplicability of the regulation, coupled with the trial court's limiting instruction, requires reversal of his conviction. We disagree.

From our examination of the record we are unable to ascertain which of the trial court's rulings the defendant questions in his claim that the trial court limited the government solely to a prosecution under 7 C.F.R. § 278.2(a) (1978). The government specified 7 U.S.C. § 2024(b) in both the indictment and its response to Liparota's Motion for Bill of Particulars as the section Liparota had allegedly violated. While the response to the defendant's motion also included a reference to 7 C.F.R. § 278.2(a) (1978), it is clear that the government was required only to prove a violation of 7 U.S.C. § 2024(b) (1977) in order to obtain a conviction. Therefore, we need not determine whether the provisions of 7 C.F.R. § 278.2(a) (1978) are applicable to persons or groups other than retail food stores.

Section 2024(b) states in relevant part that:

"[W]hoever knowingly, uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons or authorization cards are of a value of $100 or more, be guilty of a felony...."

7 U.S.C. § 2024(b) (1977). Thus, acquisition and possession of food stamps violates 7 U.S.C. § 2024(b) unless there is an affirmative authorization for such acquisition or possession.

The language of section 2024(b) is broadly stated. It clearly prohibits any form of dealing in food stamps, whether by a participant or non-participant in the food stamp program, unless there has been some specific authorization for a person or organization to trade in food stamps in a specified manner under 7 U.S.C. § 2011 *et seq.* Thus, a person violates section 2024(b) by using, trading, transferring, acquiring, purchasing or selling food stamps absent specific authorization to do so.

There is no authorization anywhere in the Code or regulations for anyone to purchase food stamps. Indeed, as this court stated in *United States v. Wilson*, 438 F.2d 479 (7th Cir.), *cert. denied*, 402 U.S. 929, 91 S.Ct. 1525, 28 L.Ed.2d 863 (1971), the "pro-

---

1. "Sec. 278.2 Participation of retail food stores.

"(a) Use of coupons. Coupons shall be accepted by an authorized retail food store only in exchange for eligible food. Coupons may not be accepted in exchange for cash, except when cash is returned as change in a transaction in which coupons were accepted in payment for eligible food, under paragraph (d) of this section. Coupons may not be accepted in payment of interest on loans, or for any other nonfood use."

visions are apparently designed to prevent trafficking in such coupons." *Id.* at 481. While the provisions at issue in that case involved purchase of food stamps by a participant in the food stamp program, the broad language of section 2024(b) clearly does not limit the congressional prohibition to participants in the program. Rather, it forbids any person to purchase food stamps.

In light of the broad language of section 2024(b), the trial court limited the prosecution to proof that Liparota violated the statute by *purchasing* the stamps.[2] We believe the prosecution did this to the satisfaction of the jury and we decline to overrule the jury verdict on these grounds.

■ The appellant's second argument is that the trial court erred in failing to instruct the jury on the meaning of "willfully" because the indictment charged him with knowingly and willfully purchasing the food stamps contrary to 7 U.S.C. § 2024(b) (1977). We find this contention to be without merit as § 2024(b) clearly states that only a finding of general intent is necessary to sustain a conviction.

We are aware that other circuits have held that a specific intent instruction must be given in a prosecution under 7 U.S.C. § 2024(b). *United States v. Marvin*, 687 F.2d 1221 (8th Cir.1982), *cert. denied*, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983); *United States v. O'Brien*, 686 F.2d 850 (10th Cir.1982). Both courts held that the adverb "knowingly" as used in section 2024(b) modifies the verbs "uses, transfers,

acquires ..." and the phrase "in any manner not authorized ...." *Marvin*, 687 F.2d at 1226; *O'Brien*, 686 F.2d at 853. Therefore, both courts found that section 2024(b) requires a finding of specific intent. We respectfully disagree and hold that section 2024(b) only requires proof that a defendant knowingly used, transferred, acquired or possessed food stamps or authorization cards and that such use, transfer, etc. was unauthorized.

The Tenth Circuit noted, "7 U.S.C. section 2024(b) is simply not clear on its face, and, on the contrary, is ambiguous. The statute can be read either way." *O'Brien*, 686 F.2d at 852. The court stated that section 2024(b) can be read so that:

"the adverb 'knowingly' modifies only the verb 'acquire,' and does not modify the ensuing clause 'in a manner not authorized by this chapter or the regulations issued pursuant to this chapter .... [or] that the word 'knowingly' modifies not only the verb 'acquire,' but also the ensuing clause."

*Id.* at 851–52. However, a comparison of the placement of the word "knowing" in 7 U.S.C. § 2024(c) (1977)[3] to the placement of the word "knowingly" in section 2024(b) is evidence that Congress "knew how to place the word ... in such a way as to require unambiguously that a person know he is acting contrary to law." *Marvin*, 687 F.2d at 1226. In view of the fact that Congress knew precisely how to create a specific intent offense, and did so in the provision immediately following the section

---

2. The trial court stated:
"I think there is a more serious question, and that is whether under the bill of particulars the Government should be permitted to argue alternatively that Mr. Liparota committed an offense because he received food stamps under any circumstances, not being a certified participant in the program. . . .
"The statute says that unless you are authorized to receive food stamps, thou shalt not receive them .... He's not authorized to receive them. So if he hadn't paid a dime for them, one can argue that he would violate 2024(b).
"That, however, is not the charge that the Government has brought against him in light of the bill of particulars .... I am going to

confine the Government in its theory of the case to the proposition that Mr. Liparota violated the statute when he purchased the stamps for cash."
Trans. 165–66.

3. 7 U.S.C. section 2024(c) (1977) provides in relevant part:
"Whoever presents, or causes to be presented, coupons for payment or redemption of the value of $100 or more, knowing the same to have been received, transferred, or used in any manner in violation of the provisions of this chapter or the regulations issued pursuant to this chapter shall be guilty of a felony ...."

at issue here, we find that section 2024(b) cannot be characterized as ambiguous. It must be held that Congress intended to require only proof of general intent.

 With respect to the defendant's argument that the inclusion of the word "willfully" in the indictment required the government to prove specific intent, this court has held that allegations in an indictment not essential to prove the crime charged are mere surplusage. *United States v. Greene,* 497 F.2d 1068 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). Such allegations need not be proved nor embodied in instructions to the jury. *United States v. Harper,* 579 F.2d 1235 (10th Cir.), *cert. denied,* 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978); *Milentz v. United States,* 446 F.2d 111 (8th Cir.1971).

 Additionally, this court has specifically disapproved of boiler plate specific intent instructions where the trial court "adequately instructs on the requisite mental state by other means." *United States v. Arambasich,* 597 F.2d 609, 613 (7th Cir.1979). Indeed, in *Arambasich,* this court disapproved of the very instruction tendered by the appellant. *Id.* at 610–11; *see* 1 E. Devitt & C. Blackman, Federal Jury Practice and Instructions, section 14.-03 (3d ed. 1977).

The trial court appropriately instructed the jury on general intent and was equally correct in refusing to give the tendered specific intent instruction to the jury. Specific intent is not required for a conviction under 7 U.S.C. § 2024(b) (1977) and we hold an instruction on specific intent could very well have confused rather than enlightened the jury on the element of intent.

 The appellant's final argument is that the trial court erred in failing to instruct the jury on entrapment. It is well-settled law in this circuit that a defendant must admit to the commission of the offenses for which he is tried in order to

properly raise an entrapment defense.[4] In *United States v. Kaiser,* 138 F.2d 219 (7th Cir.1943), the defendant was found guilty of selling morphine. This court stated "[i]t is difficult to conceive of a competent attorney arguing to a court and jury that the defendant did not make the alleged sales, but, if so, he was entrapped." *Id.* at 220. In *United States v. Roviaro,* 379 F.2d 911 (7th Cir.1967), we refused to overturn the defendant's conviction for selling heroin, stating "... defendant admitted no criminal acts. In such a situation, it has been held that a defendant may not use the entrapment defense." *Id.* at 914 (citations omitted). In *United States v. Johnston,* 426 F.2d 112 (7th Cir.1970), this court reiterated its previous holdings that "absent admission of the act an instruction on entrapment will not be submitted to the jury." *Id.* at 114.

Finally, in *United States v. Nicosia,* 638 F.2d 970 (7th Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981), this court refused to overrule *Johnston* because "the evidentiary record on appeal is devoid of any evidence in support of a defense of entrapment calling for an appropriate jury entrapment defense instruction." *Id.* at 973. Thus, it is clear in this circuit that a defendant must admit the alleged acts which constitute the crime with which he is charged in order to raise an entrapment defense.

 Here, the appellant denied any participation in the transactions that occurred on April 3 or May 6, 1982. With respect to the transaction of March 27, 1982, Liparota admitted only to the discussion concerning the price of the stamps with Hampton and the introduction of Hampton to his brother, who in turn purchased the stamps. We hold the record fails to disclose any evidentiary foundation for the presentation of entrapment instructions to the jury and

---

4. Other circuits have held that a defendant need not admit the acts of the alleged crime in order to raise an entrapment defense. *United States v. Demma,* 523 F.2d 981 (9th Cir.1975) *(en banc);*

*United States v. Harrell,* 436 F.2d 606 (5th Cir. 1970), *cert. denied,* 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); *Hansford v. United States,* 303 F.2d 219 (D.C.Cir.1962).

thus we hold the trial court did not err in refusing to instruct the jury on this issue.

The jury verdicts are AFFIRMED.