Jim Dean BARTON, Petitioner-Appellant,

v.

Clyde MALLEY, Warden; and Santos Quintana, Director Field Services Division, New Mexico Department of Corrections, Respondents-Appellees.

No. 78–1531.

United States Court of Appeals,
Tenth Circuit.

Argued March 12, 1980.

Decided July 16, 1980.

Tova Indritz, Asst. Federal Public Defender, Albuquerque, N. M., for petitioner-appellant.

Andrea Buzzard, Asst. Atty. Gen., Santa Fe, N. M. (Toney Anaya, Atty. Gen., and Ralph W. Muxlow II, Asst. Atty. Gen., Santa Fe, N. M., on brief), for respondents-appellees.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Jim Dean Barton (Barton) appeals the dismissal with prejudice of his petition for writ of habeas corpus. Barton is presently incarcerated in the New Mexico State Penitentiary. Exhaustion of available state remedies is not at issue.

Barton was originally convicted of armed robbery by a New Mexico state court in November, 1965. Prior to sentencing, he escaped from the San Juan County, New Mexico, jail. After his recapture, Barton was sentenced to confinement in the state penitentiary for a period of not less than ten years nor more than fifty years on the armed robbery conviction. Barton's trial on the jail escape charge resulted in a verdict of guilty, and the imposition of a one to five year sentence.

In March, 1970, Barton was paroled, institutionally, from the armed robbery sentence. He then began serving the escape sentence. Parole from the escape sentence, and release to the community, was granted effective January 4, 1971. Barton was released to the community on January 17, 1971.[1]

Sometime in November, 1971, Barton was asked to speak about conditions at the New Mexico State Penitentiary by a prison reform group known as Citizens Concerned About Corrections. Barton attended the meeting, held on November 10, 1971, at the University of New Mexico Law School in Albuquerque, after obtaining permission to leave Santa Fe County from his parole officer.[2] Barton's speech was critical of the existing corrections system in New Mexico, and, as a result, highly publicized by the local media.

The speech caused various repercussions—foremost of which, according to Bar-

---

1. The escape sentence has now been fully served and discharged.

2. One of the conditions of Barton's parole was: "1. You are required to have the written permission of your parole officer before you may:

(a) leave the State of New Mexico or the county to which you have been paroled. . . . ." Barton was paroled to Santa Fe County. Albuquerque is located in Bernalillo County.

ton, was increased parole surveillance and, ultimately, the revocation of his parole and his reincarceration. The revocation occurred following Barton's involvement in a serious two car collision which occurred on the Cerrillos-Tijeras Highway (North State Road 14) near Cedar Crest, Bernalillo County, New Mexico. Barton sustained various injuries. The driver of the other vehicle was killed. At the revocation hearing, Barton admitted that he had been out of the county to which he was paroled (Santa Fe County) without his parole officer's permission, but he attempted to justify his actions. The New Mexico Parole Board revoked Barton's parole status solely on that basis.[3]

Following this revocation, Barton remained in the penitentiary until March, 1973, when he was reparoled. In February, 1974, Barton dropped out of classes at the College of Santa Fe, resigned from his employment and left the State of New Mexico. In April, 1974, Pennsylvania authorities detained Barton for extradition to New Mexico on the basis of a "Warrant for Paroled Prisoner". After lengthy extradition proceedings, he was returned to the New Mexico State Penitentiary as a parole violator on February 22, 1975. In March, 1975, a preliminary hearing was held on Barton's second parole revocation. The charges were failure to (1) obtain written permission before changing addresses or employment; (2) advise his parole officer of leaving employment; and, (3) submit monthly reports. Parole was revoked on March 26, 1974. He has been incarcerated continuously since that date. Barton has become eligible for parole, but has either been denied it or waived consideration of parole.

Barton filed his petition for habeas corpus relief in the District Court on December 23, 1976. He was represented by court appointed counsel and granted an evidentiary hearing. Central to his claims was the belief that the exercise of his First Amendment rights in criticizing the correctional system in New Mexico resulted in retaliation which ultimately led to his reincarceration. Specifically, Barton maintained that he was denied equal protection and due process of law (1) when the State of New Mexico selectively enforced its laws against him in retaliation for the exercise of his First Amendment right; (2) in the imposition and revocation of his parole; (3) in his extradition from Pennsylvania on a sentence which had already expired; and, (4) by the manner in which New Mexico computed his sentences. After a somewhat lengthy hearing, in which numerous witnesses were examined, the Magistrate assigned to the case filed proposed findings of fact and conclusions of law specifically treating each issue and generally concluding that:

11. From the preponderance of the evidence three obvious facts were established:

a. Petitioner was treated within constitutional limitations.

b. Petitioner's difficulties with the parole authorities were the result of his own doing.

c. Such "doings" reflect a deplorable waste of a superior intellect.

[R., Vol. I, p. 262].

In response to Barton's objections to the proposed findings and conclusions, the District Court conducted a *de novo* review as required by 28 U.S.C.A. § 636(b)(1). The Court adopted the findings and conclusions of the Magistrate, and dismissed the action with prejudice.[4] [R., Vol. I, p. 287]. This appeal followed. The District Court issued a certificate of probable cause.

On appeal, Barton raises the same issues as those presented before the Magistrate and in the District Court: (1) impermissible selective enforcement by officials of the State of New Mexico; (2) due process of

---

3. Two other violations of parole were charged: 1) endangering the person, property, or rights or another by being involved in the automobile accident, and, 2) being a detriment to the community. Both of these violations were dropped at the parole revocation hearing.

4. No evidentiary hearing was held in the District Court. *See Blasingame v. Estelle*, 604 F.2d 893 (5th Cir. 1979); *Durham v. Wyrick*, 545 F.2d 41 (8th Cir. 1976).

law violations which occurred during the imposition and revocation of his parole; (3) extradition proceedings held in Pennsylvania which deprived him of constitutionally secured rights; and, (4) the New Mexico Department of Corrections' constitutionally infirm method of determining the nature and length of his sentences.

### Selective Enforcement Claims

Barton asserts that he was denied equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution, when officials of the State of New Mexico selectively enforced its laws against him. According to Barton,

> [T]he reason for the selective enforcement . . . is clear and simple: Barton had exercised his constitutionally protected rights of freedom of association and freedom of speech. He attended a meeting of a group of citizens formed to learn about and correct injustices in the penal system of New Mexico. He spoke to his assembled fellow citizens about problems of which he had personal knowledge and which are generally shielded from the press and social view. That meeting received coverage in the written and electronic media. . . . Parole reports which had fairly glowed with reports of his academic excellence, his stable employment, and great potential for contributing to society, suddenly turned about-face. His parole officer began to search for violations in highly unusual ways: anonymous reports were received; newspaper clippings were included in his file. He was involved in an auto accident which was not his fault, but he was out of the county. Therein a pretext was found and his parole was revoked. And ever since Barton has paid an exorbitant price for the exercise of this con[s]titutionally protected rights. The toll was exacted not only in the parole revocation of 1972, but in the harassment during his second parole, in the bad faith shown in an extradition based upon a conviction already fully served, and in denial of access to parole files which contain damaging and false information.

[Brief of Appellant at pp. 24–25, 27].

### A.

Nearly a century ago, the Supreme Court recognized that the administration of justice "with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances" violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Yick Wo v. Hopkins*, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). *Cf. Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976), *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (proscribing similar action on the part of the United States Government). To allow the revocation of a previously granted parole status on the basis of arbitrary or irrational factors would alter the parole system's purpose of helping individuals reintegrate into society as constructive members of the community, to one fostering personal abuse of governmental power. *See United States v. Torquato*, 602 F.2d 564, 568 (3d Cir. 1979), *cert. denied*, 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307. The nature of the parole and probation system, however, requires that these limitations be applied only where necessary and where intrusion upon those officials' wide discretion is absolutely necessary. Federalism considerations demand this, where courts of the United States are called upon to determine delicate questions involving state decision making.

The "parole-revocation determination actually requires two decisions: whether the parolee in fact acted in violation of one or more conditions of his parole and whether the parolee should be recommitted either for his or society's benefits." *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 9, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979). "The first step in a revocation decision thus involves a wholly retrospective factual question." *Morrissey v. Brewer*, 408 U.S. 471, 479, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484

(1972). The second step, however, "is not purely factual but also predictable and discretionary" often turning on subjective policy choices and individual assessments of the parolee's and society's interest in reincarceration made by experienced parole board members. *Id.* at 480, 92 S.Ct. at 2599. *Cf., Gagnon v. Scarpelli,* 411 U.S. 778, 787, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973). Under such circumstances, our *only* function is to insure that the minimum standards demanded by the United States Constitution are met. *See Morrissey v. Brewer, supra.*

■ In order to support a claim of selective enforcement based on discriminatory revocation of parole, the petitioner must establish that (1) while others similarly situated have not generally been subjected to revocation proceedings because of the type of conduct forming the basis of the charges, he has been singled out for prosecution, and (2) the selection of the petitioner for revocation has been based on intentional, purposeful discrimination stemming from impermissible considerations such as race, religion, or the desire to prevent the exercise of other constitutionally secured rights. *United States v. Torquato, supra; United States v. Kahl,* 583 F.2d 1351 (5th Cir. 1978); *United States v. Douglass,* 579 F.2d 545 (9th Cir. 1978); *United States v. Johnson,* 577 F.2d 1304 (5th Cir. 1978); *United States v. Arais,* 575 F.2d 253 (9th Cir. 1978), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *United States v. Berrios,* 501 F.2d 1207 (2d Cir. 1974); *United States v. Berrigan,* 482 F.2d 171 (3d Cir. 1973); *United States v. Falk,* 479 F.2d 616 (7th Cir. 1973) (en banc). The burden of proving such discrimination by a preponderance of the evidence falls clearly on the complaining party. *United States v. Torquato, supra,* at 569; *United States v. Johnson, supra,* at 1308. *See also: Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).[5] In the absence of such proof,

"the presumption that a [revocation] is undertaken in good faith and in a nondiscriminatory manner . . . remains undisturbed." *United States v. Niemiec,* 611 F.2d 1207, 1209 (7th Cir. 1980); *United States v. Bennett,* 539 F.2d 45 (10th Cir. 1976), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976).

■ The "conscious exercise of some selectivity is not in itself a federal constitutional violation." *Oyler v. Boles, supra; Cook v. City of Price,* 566 F.2d 699 (10th Cir. 1977). Selective enforcement is not improper where the Government seeks to prosecute flagrant violations. *Id.* at 701. "Aggressively displaying one's antipathy to the . . . system or daring the Government to enforce it does not create immunity from, or a defense to, prosecution." *United States v. Heilman,* 614 F.2d 1133 (7th Cir. 1980), *quoting, United States v. Stout,* 601 F.2d 325, 328 (7th Cir. 1979), *cert. denied,* 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406; *United States v. Catlett,* 584 F.2d 864 (8th Cir. 1978); *United States v. Johnson, supra.*

### B.

Our review of the evidence adduced at the evidentiary hearing leads us to agree with the District Court that Barton failed to meet his burden of establishing that the revocation stemmed from intentional and purposeful discrimination. The Magistrate's findings and conclusions on this issue, as adopted by the District Court following a *de novo* review, state:

The preponderance of the evidence does not establish that the parole authorities discriminated against petitioner to the extent of denial of his constitutional rights. Parole is essentially a matter of executive grace. There is substantial evidence that the parole authorities kept a closer rein on petitioner than other parolees, but the obvious hostile attitude of petitioner towards such authorities was

---

5. In order to avoid unnecessary intrusion on the states' parole processes, the parolee "is obligated to make a threshold showing of discriminatory prosecution before an evidentiary hearing will be accorded on this issue." *United*

*States v. Torquato, supra,* at pp. 569–570; *United States v. Larson,* 612 F.2d 1301 (8th Cir. 1980); *United States v. Brown,* 591 F.2d 307 (5th Cir. 1979).

not an unreasonable cause for such. The evidence does not establish a constitutional denial of First Amendment rights, nor does it establish that the attitude of the parole authorities was such that in subsequent parole hearings he suffered collateral consequences, or illegal discrimination. Rather the evidence indicates that the parole authorities went to considerable length in an attempt to reason with petitioner about the conditions for his parole and he would not cooperate with them. [R., Vol. I, pp. 260–261].

In accordance with rules 52(a) and 81(a)(2), Fed.Rules Civ. Proc., 28 U.S.C.A., we cannot set aside the District Court's findings of fact unless they are clearly erroneous. *Serviss v. Moseley*, 430 F.2d 1287 (10th Cir. 1970); *United States ex rel. Henne v. Fike*, 563 F.2d 809 (7th Cir. 1977), *cert. denied, Henne v. Fike*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978). In order to conclude that these findings are clearly erroneous we must be "left with the definite and firm conviction that a mistake has been committed." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969), *quoting, United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). In making this determination, we may look to both the direct and circumstantial evidence presented. *Pate v. Wainwright*, 607 F.2d 669 (5th Cir. 1979). Our function, however, is not to weigh conflicting evidence or to pass on the credibility of witnesses. *Brown v. Crouse*, 425 F.2d 305 (10th Cir. 1970).

One of the conditions of Barton's 1971 parole was: "1. You are required to have written permission of your parole officer before you may: (a) leave the State of New Mexico or the county to which you have been paroled. . . ." [R., Vol. VII]. As stated by the Supreme Court in *Morrissey v. Brewer, supra*, 408 U.S. at 477–478, 92 S.Ct. at 2598–2599,

"The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. . . . The conditions of parole serve a dual purpose; they prohibit, either absolutely or conditionally, behavior that is deemed dangerous to the restoration of the individual into normal society. And through the requirement of reporting to the parole officer and seeking guidance and permission before doing many things, the officer is provided information about the parolee and an opportunity to advise him. The combination puts the parole officer into the position in which he can try to guide the parolee into constructive development. [Footnote omitted].

The evidence is undisputed that in March, 1971, Barton violated two conditions of his parole—one, he left Santa Fe County without the permission of his parole officer, and, two, he associated with a known felon. Although a "Preliminary Violation Report" was submitted to the Director of Adult Probation and Parole, revocation at that time was not recommended. That recommendation was concurred in by the Director of Adult Probation and Parole. [R., Vol. III, p. 147]. In mid-November, 1971, Barton's parole officer began receiving "information from various collateral sources that Mr. Barton was frequenting certain liquor establishments, which was a violation of parole; also, that he was leaving the county without permission, which . . . would also amount to a violation of parole." [R., Vol. III, p. 158, 109]. As a result, parole supervision was intensified. [R., Vol. III, p. 158]. On the morning of the accident which ultimately led to the first revocation of parole, Barton's parole officer specifically discussed allegations made surrounding Barton's departure from the county without prior permission. Barton denied engaging in such actions. His parole officer, however, reminded him that he must have prior permission under the terms of his parole before leaving the county [R., Vol. III, p. 170]; and that failure to obtain such permission would result in revocation. [R., Vol. III, p. 177; R., Vol. VI, pp. 116–117]. That evening Barton was involved in the

automobile accident outside the county. At his parole revocation hearing, he admitted leaving the county without permission. [R., Vol. III, p. 171; R., Vol. VI, p. 119].

The non-pretextual nature of Barton's parole revocation is apparent from the record. Although New Mexico parole officers are accorded wide discretion in dealing with parolees, "it was the understanding of each parole officer that each condition, in itself, could result in revocation should there be a violation, and each could stand on its own merits for purposes of the violation and revocation." [R., Vol. II, p. 113]. It was generally agreed that leaving the county without permission did not result in revocation [R., Vol. II, pp. 24, 114]. However, this was conditioned on a finding of "no previous violations that the officer was aware of, and . . . [a decision] . . . that the man could still be dealt with under parole supervision." [R., Vol. II, p. 114].

Barton's parole officer recommended revocation following the accident because "he [Barton] had already gotten a break before, when he left the county without permission and associated with Michael Martinez; and also the fact that that very morning he did leave the county without permission, and that very day he [was] involved in an auto accident outside the county." [R., Vol. III, p. 175]. Barton's parole officer expressed doubt that parole could be validly revoked as a result of public speeches given by a parolee [R., Vol. III, p. 154], and that, in any event, Barton's speech did not enter into his decision to recommend revocation of parole in 1972. [R., Vol. III, p. 178]. In his words, he "would have recommended a revocation of parole, even if there hadn't been these speeches." [R., Vol. III, p. 178]. A member of the Parole Board in 1972 agreed, and testified that Barton's parole was not revoked as a result of any public statements. [R., Vol. III, pp. 133–134]. Other supportive evidence was presented, e. g., R., Vol. IV, pp. 98–100.

Under these circumstances, we hold that the District Court did not err in finding that Barton's 1972 revocation was valid. While the evidence was conflicting, the entire record supports the District Court's determination on this issue.

Similarly, we hold that our review of the entire record supports the District Court's view that Barton's exercise of his First Amendment rights did not result in harassment during his second parole, in proceedings held in Pennsylvania, or in other ways.[6]

### Due Process in the Imposition and Revocation of Parole

Barton asserts that he was denied due process of law in the imposition and revocation of his parole by (a) the failure of the State to keep him properly informed of his parole conditions; (b) the revocation of his parole for violations of conditions no longer in effect; (c) denial of counsel at his parole revocation hearing; and, (d) denial of reasonable access to information prior to his revocation hearings, and other due process rights, identified in *Morrissey v. Brewer, supra,* and its progeny.

### A.

■ We first address Barton's contentions surrounding the conditions of his parole—that the failure to keep him informed as to changes in parole conditions denied him adequate notice of what conduct was required to maintain his status as a parolee. The argument is unconvincing.

The contentions surrounding this issue go only to Barton's second revocation of parole. That revocation was based on his failure to (1) obtain written permission before changing addresses or employment; (2) advise his parole officer of leaving employment; and, (3) submit monthly reports. These conditions of parole were imposed by Barton's original certificate of parole executed and acknowledged by him in March, 1973. [R., Vol. IV, pp. 15–16; 101–103; Certificate of Parole dated March 21, 1973, R., Vol. VIII].

---

6. Any argument that New Mexico officials engaged in vindictive conduct, *cf. Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (retaliation based on exercise of appeal rights), is also unpersuasive.

Testimony was presented that parolees were expected to abide the conditions contained in their original Certificates of Parole—new conditions imposed did not generally control. [R., Vol. IV, pp. 22–24]. The only occurrence of retroactive application of new conditions of parole did not affect Barton. [R., Vol. IV, p. 113]. While some variations in parole were made by his parole officer, these did not affect the conditions involved in the second revocation, and did not result in constitutional error. Barton was accorded adequate notice of the conduct required of him by the conditions of his parole as they related to his subsequent revocation.

### B.

The remaining contentions—denial of counsel, pre-revocation discovery, and other due process rights—will be treated jointly.

■ Barton's first parole revocation occurred in April, 1972, prior to the Supreme Court's decision in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *Gagnon, supra*, held that, in some circumstances, due process requires that an indigent parolee be appointed counsel at revocation proceedings. Barton requested appointment of counsel at his 1972 parole revocation hearing. Such representation was denied. He now claims that the failure to appoint counsel deprived him of due process of law under the *Gagnon* decision. This reliance is misplaced, inasmuch as *Gagnon, supra*, has not been applied retroactively. *Wolff v. McDonnell*, 418 U.S. 539, 574, 94 S.Ct. 2963, 2983, 41 L.Ed.2d 935 (1974).

At Barton's second revocation proceeding, which occurred in 1975, he was denied appointed counsel at both the preliminary and final stages. *Gagnon* clearly applies to these proceedings. In *Gagnon*, the Court stated:

> We think . . . that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority

charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

*Gagnon v. Scarpelli, supra*, 411 U.S. at p. 790, 93 S.Ct. at p. 1763.

In our view, however, this is not the type of case in which fundamental fairness demands appointment of counsel. The parole violations were admitted, and Barton was "capable of speaking effectively for himself." *Id.* at 791, 93 S.Ct. at p. 1764. Under such circumstances, we will not disturb the Parole Board's exercise of its discretion.

■ Barton next argues that he was deprived due process of law by New Mexico's failure to disclose the contents of his parole file prior to each revocation hearing. In *Morrissey, supra*, the Supreme Court held that the minimum requirements of due process require "disclosure to the parolee of evidence against him". *Morrissey v. Brewer, supra*, 408 U.S. at p. 489, 92 S.Ct. at p. 2604. We have reviewed the documents in question, as well as the evidence and arguments presented in the District Court, in specific relation to this issue. Our view accords with that of the District Court. The failure to disclose the parole file did not give rise to constitutional error.[7]

■ Barton's final due process challenge centers around his right to a preliminary revocation hearing under *Morrissey v. Brewer, supra*. *Morrissey, supra*, normally requires that parolees be afforded reasonably prompt preliminary hearings following arrest in order to determine "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485, 92 S.Ct. at 2602.

---

**7.** Such material should be disclosed unless privileged or good cause for its nonproduction is articulated.

Following Barton's departure from New Mexico in February, 1974, he traveled to Pennsylvania where he obtained employment as a bartender. On June 15, 1974, he witnessed a fight which resulted in a death. The following day he was arrested as a material witness, questioned and released. Later that day, he was rearrested and charged with simple assault in connection with the skirmish. These charges were subsequently dismissed.

On April 5, 1974, Barton's parole officer submitted a violation report alleging that Barton had violated three conditions of his parole by failing to obtain permission before changing his residence or employment, failing to advise his parole officer of leaving employment, and failing to report regularly. Acting on a warrant, Pennsylvania authorities detained Barton. He challenged extradition proceedings and was not returned to New Mexico until February 22, 1975. On March 4, 1975 a preliminary hearing on the revocation charges was held. Parole was revoked on March 26, 1975. Barton has been given credit towards his armed robbery sentence (No. 20406) for the period June 15, 1974 to February 22, 1975 (the extradition delay). [R., Vol. I, pp. 201, 210, 259].

In *Chilembwe v. Wyrick*, 574 F.2d 985 (8th Cir. 1978) (per curiam) similar claims were raised under almost identical facts. Chilembwe was arrested in Nevada for extradition to Missouri on a probation violation in October, 1974. He was not accorded a preliminary hearing at or near the time of his arrest. After lengthy extradition proceedings, Chilembwe was returned to Missouri in March, 1975. Probation was revoked on June 6, 1975, and a sentence of imprisonment executed. Responding to the contention that "he was denied due process of law because he did not receive a preliminary revocation hearing as required by . . . *Gagnon v. Scarpelli*, 411 U.S. 778 [93 S.Ct. 1756, 36 L.Ed.2d 656] . . . (1973)," the Court stated:

> The fundamental purpose of a preliminary hearing is to determine whether

there is probable cause to believe that the detained probationer has committed acts which violate the conditions of his probation. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593 [2602,] 33 L.Ed.2d 484 (1972). This court holds that where obtaining permission before leaving the state is a condition of parole, a parolee's presence in another state without such permission is sufficient probable cause to believe he committed an act which constituted a violation of his parole such that a preliminary probable cause hearing is not required. *Stidham v. Wyrick*, 567 F.2d 836 (8th Cir. 1977). This precedent controls our decision here since there are no differences relevant to due process between parole revocation and probation revocation. *See Gagnon v. Scarpelli, supra*, 411 U.S. at 782, 93 S.Ct. 1756 [at 1759.]

*Chilembwe v. Wyrick, supra*, at p. 987. [Footnote omitted].

We believe that the same rationale applies here. The violations which formed the basis of the second revocation of parole are susceptible to the same inference as Chilembwe's arrest outside Missouri.

Assuming, *arguendo*, that a preliminary hearing on Barton's revocation was required under the due process of law clause, release is nevertheless inappropriate. The record does not indicate that Barton was accorded a preliminary revocation hearing at or near the place of his arrest. As a remedy for such violation, Barton suggests release and termination of sentence.

Barton's present incarceration stems from a decision made after a final revocation hearing, adequate in all respects. Any denial of his right to a preliminary revocation hearing no longer bears on his incarceration. The extreme remedy of release is not justified under the facts of this case. *Cf. United States v. Companion*, 545 F.2d 308, 313 (2d Cir. 1976) (probationers).[8]

### Miscellaneous Issues

We agree with Barton that the extradition proceedings held in Pennsylvania

---

8. In any event, we hold that Barton failed to make the type of showing required for release based on unreasonable delay either in timing of a preliminary or final revocation hearing. *See*

failed to conform in all respects with that which was required. Nevertheless, those errors do not present "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), *quoting*, *Bowen v. Johnston*, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939). By stipulation, the parties agreed that Barton would be credited on his New Mexico sentence for the period of time from June 15, 1974 to February 22, 1975 (the extradition delay). The District Court's finding that "the stipulation . . . sufficiently corrects any injustice that might have resulted to the petitioner," [R., Vol. I, p. 261], is not clearly erroneous.

We have considered Barton's assertions as to the manner in which his sentences have been computed. We agree with the District Court's ruling on these issues. *See* N.M.S.A. 40A–29–9 (1953 comp., *recodified*, N.M.S.A. 31–18–19 (1978 comp.); [R., Vol. I, p. 261].

WE AFFIRM.

*Beck v. Wilkes*, 589 F.2d 901 (5th Cir. 1979), *cert. denied* 444 U.S. 845, 100 S.Ct. 90, 62 L.Ed.2d 58; *Smith v. United States*, 577 F.2d 1025 (5th Cir. 1978); *United States ex rel. Sims v. Sielaff*, 563 F.2d 821 (7th Cir. 1977).