**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eloy SALAZAR, Defendant-Appellant.**

No. 82–1588.

United States Court of Appeals,
Tenth Circuit.

Nov. 4, 1983.

Jeffrey R. Edelman, Denver, Colo., for defendant-appellant.

Charles H. Torres, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., was also on brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant Eloy Salazar was convicted, after a jury trial, on two counts [1] of unlawful acquisition and possession of food stamps in violation of 7 U.S.C. § 2024(b). Defendant appeals his conviction on four grounds. He argues that (1) § 2024(b) is unconstitutionally vague; (2) the indictment under which he was charged is insufficient; (3) the Government unconstitutionally singled him out for prosecution; and (4) the conduct of the Government agents investigating him was so outrageous as to violate the Due Process Clause of the Fifth Amendment. We disagree with all of defendant's contentions and affirm.

I

During March and April of 1981, the Inspector General's Office of the United States Department of Agriculture (USDA) and the Police Department of Denver, Colorado, were engaged in a joint investigation of illegal food stamp trafficking. The Denver Police Department identified the Pier II Bar at 3730 Federal Boulevard, Denver, Colorado, as a site of possible food stamp trafficking. Agent William F. Smith of the Inspector General's Office and Detective Robert H. Taberas of the Denver Police Department's Anti-Fencing Unit (the agents) went to the Pier II Bar on two occasions in an undercover capacity to investigate.

On March 27, 1981, the agents met with defendant, a patron of the Pier II Bar, and sold him $325 worth of food stamps for $160. A similar transaction occurred on

---

**1.** On Count I, defendant received a sentence of imprisonment for one year. On Count II, defendant received a suspended sentence and was placed on probation for three years, to begin upon his release from prison under Count I. I R. 56.

April 21, 1981. Each transaction was the subject of separate counts of the indictment.

Defendant moved to dismiss the indictment on the grounds that § 2024(b) is unconstitutionally vague; that the indictment is insufficient; and that the defendant is the victim of selective enforcement of the statute. I R. 2–3. Defendant later filed a supplemental motion to dismiss the indictment, alleging that the agents' conduct of the investigation violated the Due Process Clause of the Fifth Amendment. *Id.* at 23–24. The district court denied the motions. *Id.* at 75.

In the trial before the jury, the Government called the agents as witnesses. They testified that they met with defendant in the Pier II Bar on March 27 and April 21, 1981. On these occasions, defendant purchased the $325 worth of food stamps offered for sale by the agents. Defendant paid $160 for the food stamps in the first transaction and $170 in the second sale. III R. 20–23, 33–35; IV R. 507.

Defendant admitted at trial that these transactions occurred. He testified that he acted for a different third party on each occasion; he purchased the food stamps for the third party, using the third party's funds. Defendant also testified that he did not use any of the food stamps or make a profit on either transaction. IV R. 41–45.

## II

### Vagueness

Section 2024(b) of Title 7 of the United States Code, in pertinent part, provides:

> [W]hoever knowingly ... acquires ... or possesses [food stamp] coupons ... in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such [food stamps] ... are of a value of $100 or more, be guilty of a felony ....

Neither the statute nor the regulations promulgated thereunder authorize the acquisition of food stamps for cash in the manner described at trial in the present case.[2]

■ Defendant argues that § 2024(b) is unconstitutionally vague. He contends that "[t]he phrase 'in any manner not authorized by this chapter or the regulations issued pursuant to this chapter' is impermissibly vague in that it fails to establish reasonable standards for determining guilt or innocence." Brief for Appellant at 3. We find this argument to be without merit.

The Supreme Court enunciated the standard for evaluating whether a particular statute is unconstitutionally vague in non First Amendment areas in *Hoffman Estates, Inc. v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104,

2. The Government's direct examination of William M. Oches, officer in charge of the Lakewood, Colorado, Field Office for the USDA Food and Nutrition Service, produced the following testimony:

> Q. Do the statutes o[r] the regulations that govern the food stamp program authorize the receipt of food stamps in any other way than [through the authorized state agency]?
> A. No, they do not.
>      *    *    *    *    *    *
> Q. Other than the exchange between a retail food store and a bank which would involve food stamps for a cash amount back to the food store, [do] the statute or regulations address themselves in any other manner to the exchange of food stamps for cash?
> A. No, they do not, excepting in making change for a purchase at a retail store, that authorized retailer may give up to 99 cents per transaction.

> Q. So then would it be correct that in no other situation may food stamps be traded for cash?
> A. That's right.

III R. 7, 9–10.

The regulations provide that the appropriate state agencies are to issue food stamps to "eligible households." 7 C.F.R. § 274.1(a). The food stamps are to "be used only by the household, or other persons the household selects, to purchase eligible food for the household." *Id.* § 274.10(a). Authorized retail food stores may accept food stamps "only in exchange for eligible food. [Food stamps] may not be accepted for cash, except when cash is returned as change .... At no time may cash change in excess of 99 cents be returned...." *Id.* § 278.2(a), (d). The regulations authorize "[i]nsured financial institutions [to] redeem [food stamps for cash] only from authorized retail food stores, meal services, and wholesale food concerns." *Id.* § 278.5(a).

108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted)):

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*See also General Stores, Inc. v. Bingaman,* 695 F.2d 502, 503 (10th Cir.1982); *Hejira Corp. v. MacFarlane,* 660 F.2d 1356, 1365 (10th Cir.1981).

Section 2024(b) is not unconstitutionally vague under this standard. The regulations provide a detailed description of the authorized means of acquiring food stamps. *See supra* note 2. The statute and regulations together give sufficient notice of the proscribed conduct and provide adequate standards for enforcement.

Defendant argues that the statute is vague because it prohibits all means of acquiring food stamps if they are "not authorized" by the statute or regulations. Defendant contends that to avoid this vagueness infirmity, the statute must specifically delineate what is prohibited. Brief for Appellant at 3. We know of no constitutional mandate for such a legislative drafting decision.

■ Defendant also argues that § 2024(b) is unconstitutionally vague be-cause of its alleged uncertain application in a number of hypothetical situations. *Id.* at 3–4. We need not consider these examples, for as the Supreme Court recently stated, one "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates, supra,* 455 U.S. at 495, 102 S.Ct. at 1191. *See also United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand."); *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

■ Defendant's vagueness challenge also fails in light of the nature of the offense under § 2024(b). The Supreme Court has held that "a scienter requirement may mitigate a law's vagueness." *Hoffman Estates, supra,* 455 U.S. at 499, 102 S.Ct. at 1193. *See also Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979); *Screws v. United States,* 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945) ("[T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid."). We have held that scienter is required for conviction under § 2024(b). *See United States v. O'Brien,* 686 F.2d 850, 853 (10th Cir.1982) ("[K]nowledge that one's acquisition of food stamps is not authorized by statute or regulation is an essential element of 7 U.S.C. § 2024(b).").

■ In the present case, the trial judge instructed the jury that specific intent is required for conviction under § 2024(b).[3]

---

**3.** The trial judge gave a jury instruction on specific intent based on E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions,* § 14.03, at 377 (3d ed. 1977). The charge given stated:

> The crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted.
>
> Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove the defendant knowingly did an act which the law *provides,* purposefully intending to violate the law. Such intent may be determined from all of the facts and circumstances surrounding the case.
>
> An act or a failure to act, if knowingly done, is knowingly done if done voluntarily and intentionally and not because of mistake or accident, or other innocent reason.

Moreover, the Government asked defendant on cross examination: "You knew you were not authorized to purchase those [food] stamps during your discussion with [the undercover agents]?" Defendant replied: "more or less." IV R. 49. We agree with the view of other circuits that a vagueness challenge to § 2024(b) in these circumstances is without merit. *See United States v. Marvin,* 687 F.2d 1221, 1228 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983) (vagueness challenge to § 2024(b) failed because specific intent essential element of the offense); *United States v. Goyette,* 458 F.2d 992, 993 (9th Cir.1972) (per curiam) (Because defendant "admitted at trial that he knew his purchase [of food stamps] was unlawful [, h]is contention that the [predecessor to § 2024(b)] is void for vagueness borders on the frivolous.").

We are satisfied that the statute is not void for vagueness.

### III

#### *Sufficiency of the indictment*

Defendant alleges that the indictment is defective because it specifies "merely the date of the alleged offense and the dollar amount ($325.00) of the [food stamps]. The indictment contains no further detail as to the conduct relied upon to establish the charge. Moreover, there are no allegations as to the 'manner' in which the supposed acquisition or possession was unauthorized." Brief for Appellant at 4. We are not persuaded.

■ We examine the sufficiency of an indictment under the following two-part test:

First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause.

*United States v. Radetsky,* 535 F.2d 556, 562 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976). *See also United States v. Bailey,* 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980); *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Elliott,* 689 F.2d 178, 179–80 (10th Cir.1982) (per curiam); *United States v. Irwin,* 654 F.2d 671, 681 (10th Cir.), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1981); 1 C. Wright, *Federal Practice and Procedure* § 125, at 363–64 (2d ed. 1982). This test is embodied in Fed.R.Crim.P. 7(c)(1), which requires that an indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged."

■ An indictment generally is sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense. *See, e.g., Hamling, supra,* 418 U.S. at 117, 94 S.Ct. at 2907; *Irwin, supra,* 654 F.2d at 681; *Mims v. United States,* 332 F.2d 944, 946 (10th Cir.), *cert. denied,* 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92 (1964). The indictment under which defendant was charged[4] contains the date of the illegal transactions, tracks the language of § 2024(b) and adequately sets out the elements of the offense.

IV R. 60–61 (emphasis added).

In the suggested instruction in Devitt & Blackmar, the instruction uses the word "forbids" in lieu of the emphasized word "provides" given by the trial judge here. The alteration does not affect our analysis of defendant's vagueness challenge because the instruction as given satisfies the specific intent requirement of § 2024(b).

**4.** Count I of the indictment charged that

On or about March 27, 1981, in the State and District of Colorado, ELOY SALAZAR did knowingly and unlawfully acquire and possess coupons, as such term is defined in Title 7, United States Code, Section 2012, in the amount of $325 in a manner not authorized by Chapter 51 of Title 7, United States Code or the regulations issued pursuant to said Chapter, all in violation of Title 7, United States Code, Section 2024(b).

I R. 1.

Count II is identical to Count I, except for the addition of an additional defendant and a change in the date of the offense alleged. *Id.*

■ Defendant argues that the indictment is defective because it lacks the "actual particulars" of the unlawful acquisition and possession of the food stamps. Brief for Appellant at 5. The sufficiency of an indictment, however, "is not a question of whether it *could* have been more definite and certain." *United States v. Debrow,* 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953) (emphasis added). We note that the Eighth Circuit recently upheld a virtually identical indictment, although the opinion also relied on pretrial disclosure of particulars of the prosecution's case. *See United States v. French,* 683 F.2d 1189, 1194 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 304, 74 L.Ed.2d 284 (1982). We are convinced that the instant indictment was legally sufficient.

## IV

### *Selective prosecution*

Defendant contends that he was singled out for prosecution in violation of the equal protection component of the Due Process Clause of the Fifth Amendment. He says that he and approximately eighteen other persons were charged with violations of § 2024 as a result of this food stamp investigation; that all but three are members of a racial minority, Black or Hispanic; and that defendant is Hispanic. Brief for Appellant at 6.

The facts concerning the number of minority persons facing prosecution are mentioned in the record of a hearing on motions. The trial judge stated that there was testimony that there were eighteen defendants under indictment, only one of whom was an Anglo. The judge and defense counsel then summarized the facts as being that sixteen of the eighteen were non-Anglo and one defendant was an Armenian. The judge referred to the development of these facts from testimony in a related case. II R. 6–7. Government counsel made no response to the proposal of a stipulation by defense counsel on these facts. Nevertheless, because the facts were stated in the record by the trial judge, accepted by defense counsel, and apparently served as the factual predicate for the court's ruling on the issue without any objection by the

Government, we feel that it is appropriate to consider the issue on these facts.

■ In order to prevail on his charge of selective prosecution, defendant must prove, first, that he has been singled out for prosecution while others similarly situated generally have not been proceeded against for the type of conduct forming the basis of the charge against him; and second, that the Government's selection of him for prosecution. was invidious or in bad faith and was based on impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights. *See, e.g., United States v. Amon,* 669 F.2d 1351, 1356 n. 6 (10th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); *Barton v. Malley,* 626 F.2d 151, 155 (10th Cir.1980). Defendant fails to satisfy either prong of this test.

■ In support of his claim, defendant argues that "(1) the majority of persons prosecuted in this investigation are members of a minority group; and (2) the investigating agents affirmatively sought out these persons and solicited the alleged illegal purchases of [food stamps]." Brief for Appellant at 7. Although the facts outlined above show that almost all of those prosecuted as a result of this particular investigation were members of minority groups, II R. 6–7, there is no actual showing that the investigation was targeted at specific geographic areas or minority groups, or that other, nonminority offenders were not prosecuted as a result of other investigations. The evidence indicates that this investigation into illegal food stamp trafficking was based on information provided by informants and high redemption rates of food stamps at authorized retail food stores. IV R. 19–20. We therefore sustain the ruling of the trial court on this issue and hold that defendant has failed to overcome the "presumption that prosecution for violation of the criminal law is in good faith." *United States v. Bennett,* 539 F.2d 45, 54 (10th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). *See also United States v. Nunez,* 668 F.2d 1116, 1126 (10th Cir.1981).

## V

### *Outrageous governmental conduct*

Defendant argues that the conduct of the investigating agents was "so outrageous as to be fundamentally unfair and shocking in violation of due process." Brief for Appellant at 7. We find no evidence in the record to support defendant's claim.

The Supreme Court has stated that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). *See also Hampton v. United States,* 425 U.S. 484, 491–95, 96 S.Ct. 1646, 1650–52, 48 L.Ed.2d 113 (1976) (Powell and Blackmun, JJ., concurring); *id.* at 495–500, 96 S.Ct. at 1652–1655 (Brennan, Stewart and Marshall, JJ., dissenting). Yet Justice Powell has cautioned that "[p]olice overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction." *Hampton, supra,* 425 U.S. at 495 n. 7, 96 S.Ct. at 1652 n. 7. This clearly is not such a case.

Defendant supports his assertion of outrageous Government conduct by arguing that the agents acted improperly in offering to sell the food stamps to defendant when "all he was doing was 'lawfully and peacefully minding his own business.'" Brief for Appellant at 9. We recently rejected a similar due process defense in a food stamp case where stamps were offered for sale by undercover agents in *United States v. Biswell,* 700 F.2d 1310, 1313–14 (10th Cir.1983).[5] Moreover, we noted in *Biswell* that "[a]ny absence of a reasonable basis for initiation of the undercover investigation does not bar the prosecution. . . . [G]overnment agents may employ appropriate artifice and deception in their investigation." *Id.* at 1314. *Cf. United States v.*

*Khatib,* 706 F.2d 213, 217 (7th Cir.1983) ("Convictions based on sales of contraband by government agents [are] widely upheld."); *United States v. Parisi,* 674 F.2d 126, 127 (1st Cir.1982) ("[T]he most effective way to catch and deter retailers or others who would deal in bulk stolen food stamps may be for the government itself to provide the stamps to the willing buyers."). We hold that defendant has not established a due process violation.

Defendant argues further that the failure of the trial judge to instruct the jury on the outrageous conduct issue was a prejudicial error. Defendant cites no authority for this proposition. We reject defendant's contention because it is well settled that this question is for the court to decide. *See, e.g., Biswell, supra,* 700 F.2d at 1314; *United States v. Szycher,* 585 F.2d 443, 445 (10th Cir.1978).

## VI

We hold that there was no error with respect to any of the issues presented by defendant. Accordingly, the judgment is

AFFIRMED.

---

**5.** In *Biswell,* the offer of proof held insufficient to establish a due process violation included evidence tending to show that there was a lack of approval by USDA supervisors for the defendant's being targeted and lack of a foundation for targeting him; that the agents initially mentioned the food stamps; and that the agents persisted in wanting to use stamps as part of the bargain. 700 F.2d at 1314 n. 2.