**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TEDDY P. CHIQUITO,

Defendant-Appellant.

No. 05-2077

District of New Mexico

(D.C. No. CR-03-892-MCA)

**ORDER AND JUDGMENT** *

Before **HARTZ** , **SEYMOUR** , and **McCONNELL** , Circuit Judges.

A jury found Teddy Chiquito guilty on three counts of a six-count

indictment related to assaults that occurred within the boundaries of a Navajo

Indian Reservation. On January 18, 2005, the district court sentenced him to 24-

---

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

month prison terms on counts I and II to be served concurrently, followed by a ten-year minimum mandatory consecutive sentence on count V. Mr. Chiquito's counsel raises one claim: that the trial court abused its discretion in not allowing the jury to view the scene of the shootings. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), Mr. Chiquito's counsel also notes seven other claims raised by Mr. Chiquito. Our jurisdiction arises under 28 U.S.C. § 1291, and we **AFFIRM**.

### Factual and Procedural Background

Shortly after midnight on May 25, 2002, Mr. Chiquito became concerned that his fourteen-year-old daughter was attending a party at his ex-wife's home where alcohol was present. Mr. Chiquito drove to his ex-wife's home, where he found the daughter intoxicated. Although Mr. Chiquito was a police officer with the Navajo Nation Police Department, he was neither on duty nor in uniform that night, nor was he driving a police vehicle. Mr. Chiquito did, however, carry his Navajo Nation police-duty weapon with him into the party.

Shortly after Mr. Chiquito dragged his daughter from the house, a seventeen year-old, P.H., approached him. Mr. Chiquito shot P.H. in the stomach in the altercation that followed. A second man, Jonah Toledo, approached and Mr. Chiquito shot him in the leg. Mr. Chiquito testified that he warned Mr. Toledo to stop and shot him when he kept charging. Mr. Toledo testified that he was ten yards away.

On June 1, 2004, Mr. Chiquito filed a motion requesting that the court transport the jurors to Torreon and Ojo Encino, both in New Mexico, to see where the assaults happened. The government opposed the motion, and the trial court subsequently denied it. At his jury trial, which began on June 15, 2004, Mr. Chiquito argued self-defense. The jury convicted him of the counts that related to the shooting of Mr. Toledo.

**Discussion**

Through counsel, Mr. Chiquito argues that the trial court abused its discretion in not allowing the jury to view the scene of the shootings. Mr. Chiquito himself raises seven additional issues: (1) *Belcher v. Stengel* violations; (2) the lack of jury instruction on the definition of serious bodily injury; (3) the absence of medical records or medical expert testimony to support the injuries; (4) Mr. Chiquito's trial as an Indian rather than as a law enforcement officer; (5) double jeopardy; (6) obstruction of justice; and (7) qualified immunity. We consider each claim in turn.

*A. Whether the trial court abused its discretion in not allowing the jury to view the scene*

Mr. Chiquito argues that the district court abused its discretion in ruling against his pretrial motion to take the jury to two remote areas on the Navajo Indian Reservation. The district judge denied the motions, stating that "there are

other avenues here that will make available to the jury all the information that they need." Mr. Chiquito also argues that the court abused its discretion in making such a ruling at the pretrial stage, rather than deferring until the trial was underway so as to rule on the motion "within the context of the trial."

A trial court acts within its discretion when it denies a motion for a jury view of a crime scene so long as sufficient evidence is available to describe the scene, such as testimony, diagrams, or photographs. *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997); *see also United States v. Culpepper*, 834 F.2d 879, 883 (10th Cir. 1987) (finding that the trial court did not abuse its discretion where the condition of the scene had changed and photographs were admitted into evidence). Among other things, we consider whether the jury view would confuse jurors or be logistically difficult. *Crochiere*, 129 F.3d at 236.

In his motion for a jury view, Mr. Chiquito argued that it was necessary to show the jury "the distances between the places involved, [and] the desolation of the places involved" and because "no measurements were taken when evidence was collected." However, it was undisputed that the government had numerous photographs of the area where the incident occurred, including aerial photographs and a videotape with panoramic and focused shots of the surrounding area. Additionally, nothing prevented Mr. Chiquito from obtaining his own photographs and measurements if he found the government's inadequate. As noted by the

-4-

district court in denying the motion, "a daytime visit would not necessarily portray the scene as it appeared" on the night of the shooting—thus potentially confusing or misleading the jury. Finally, "a jury view of the requested locations, especially during the evening, would [have been] logistically difficult and time-consuming given their remote location and distance" [100 miles] from the courthouse. We find that the district court acted within its discretion in denying Mr. Chiquito's motion for a jury view.

## B. Claims Raised By Mr. Chiquito

### 1. Belcher v. Stengel *violations*

Mr. Chiquito cites *Belcher v. Stengel*, 429 U.S. 118 (1976), presumably to argue that he could claim qualified immunity because he used a weapon that he was required to carry while off-duty. *Belcher* considered whether an off-duty officer using his police weapon acted under color of law within the meaning of 42 U.S.C. § 1983. This civil rights statute provides that an individual who deprives another of his constitutional rights under color of state law "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." This case, however, involves a criminal conviction unrelated to 42 U.S.C. § 1983; qualified immunity applies only in a civil action for damages. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Additionally, although the Supreme Court had granted certiorari to determine whether an off-duty officer's

use of a weapon is an act "under color of law" within the meaning of 42 U.S.C. § 1983, in *Belcher* the Court later dismissed the writ as improvidently granted. *Id.* at 119–20. Consequently, it is impossible to establish such a thing as a "*Belcher v. Stengel* violation," let alone find one here.

*2. The court failed to instruct the jury on the definition of serious bodily injury*

Mr. Chiquito argues that the district court failed to instruct the jury properly as to the definition of serious bodily injury. The court instructed the jury that serious bodily injury is "bodily injury which involves (a) a substantial risk of death, (b) extreme physical pain, (c) protracted and obvious disfigurement, or (d) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." That definition of serious bodily injury is identical to the one found in 18 U.S.C. § 1365(h)(3). We find that the court's instruction on this point was adequate.

*3. No medical record or expert testimony was introduced into evidence*

Mr. Chiquito argues that no medical record or expert medical testimony was introduced at trial to substantiate the injuries sustained by Mr. Toledo. However, the parties stipulated to the testimony of the doctor who treated Mr. Toledo's injuries and described their severity. Consequently, Mr. Chiquito's contention that no such testimony was received is without merit.

*4. Chiquito was tried as an Indian rather than as a law enforcement officer*

Mr. Chiquito argues that he should have been tried as a law enforcement officer—presumably meaning that he should have been entitled to qualified immunity. However, as noted above, qualified immunity provides immunity to law enforcement officers in a *civil* action, whereas this is a criminal appeal. *See Harlow*, 457 U.S. at 818. Consequently, qualified immunity is not applicable.

*5. Double Jeopardy*

Mr. Chiquito raises a double jeopardy claim that he was tried in federal court "as Indian and law enforcement officer." The double jeopardy clause protects "against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 306–07 (1984). Because Mr. Chiquito presents no argument that any of those three scenarios exist in his case, we find that double jeopardy does not apply.

*6. Obstruction of Justice*

Mr. Chiquito argues that his rights to due process were violated and alleges "obstruction of justice" because the other individuals involved in the underlying altercation—including Mr. Toledo—were not charged in the Tribal Criminal Justice System. It appears that Mr. Chiquito is alleging selective prosecution. However, in order to prevail on a selective prosecution claim, a defendant must

show not only that he was singled out for prosecution unlike others similarly situated, but also "'that the government's selection of him for prosecution was invidious or in bad faith, and was based on impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights.'" *United States v. Davis*, 339 F.3d 1223, 1228 n. 3 (10th Cir. 2003) (quoting *United States v. Salazar*, 720 F.2d 1482, 1487 (10th Cir. 1983)). Here, however, the other individuals involved in the altercation were *not* similarly situated; only Mr. Chiquito discharged a firearm. Additionally, no evidence suggests that the government's decision to prosecute him was invidious or in bad faith.

*7. Qualified Immunity*

Mr. Chiquito cites a Sixth Circuit case, *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005), in arguing that a district court's summary judgment order regarding a denial of qualified immunity may be immediately appealable. As previously discussed in this order, however, a qualified immunity argument is misplaced because this is a criminal appeal.

The judgment of the United States District Court for the District of New Mexico is **AFFIRMED** .

Entered for the Court,

Michael W. McConnell
Circuit Judge

-8-